# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RENE OROZCO,

     Plaintiff,

v.                                                                     No. 1:18-cv-769-KWR-SCY

THE BOARD OF COMMISSIONERS OF THE
COUNTY OF SANDOVAL, CORRECTIONS OFFICER
BRIAN EDWARDS individual and in his official capacity,
CORRECTIONS OFFICER (FNU) MALDONADO
Individually and in his official capacity, LIEUTENANT (FNU)
TRUJILLO individually and in his official capacity,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Brian Edwards' (Edwards) Motion to Dismiss, alternatively for Qualified Immunity, filed March 10, 2020 **(Doc. 47).** Having reviewed the parties' pleadings and the applicable law, the Court finds the Motion is well-taken and, therefore is **GRANTED.**

## BACKGROUND

This case arises from Defendants' alleged deliberate indifference to the endangerment of Plaintiff Rene Orozco, resulting in two successive beatings while incarcerated at Sandoval County Detention Center (SCDC), as well as Plaintiff's later release, purportedly on foot far from any medical assistance or his residence. Plaintiff claims that the attacks, at the very least the second one, were preventable. The Second Amended Complaint (SAC) (**Doc. 45**) filed this case asserts claims under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act for, *inter alia*, Inadequate Inmate Protection and Inadequate Prevention of Physical Injury (Counts One and Two),

Inadequate Medical Care (Count Three), and Negligence (Count Four).

## LEGAL STANDARD

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss, the complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556); see also *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for

these claims."). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). The degree of specificity "depends on context". *Id*. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Edwards has asserted the defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Romero v. Story*, 672 F.3d 880 (10th Cir. 2012).

When a defendant raises the defense of qualified immunity, the plaintiff bears a heavy, two-fold burden. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must put forward evidence showing (1) that the defendant violated plaintiff's constitutional rights, and (2) the right at issue was clearly established at the time of the violation. *Id*. "If the plaintiff does not meet this heavy burden, then the government official is 'properly spared the burden and expense of proceeding any further,' and should be granted qualified immunity." *Flores v. City of Farmington*, 2019 WL 4860898, at *3 (D.N.M. Oct. 2, 2019).

" 'In considering (reviewing) a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court 'accept[s] as true all well-pleaded factual allegations in a complaint and view[s] these allegations in the light most favorable to the plaintiff.' *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (citation and internal quotation omitted)." *Id* at 2.

3

## DISCUSSION

### I.      Dismissal of Claims against Edwards in his Official Capacity

Edwards moves to dismiss the claims asserted against him in his official capacity as duplicative of those brought against the Board of Commissioners of the County of Sandoval as the governmental entity. **Doc. 47 at 12-13**. Plaintiff has consented to dismissal of those claims. Accordingly, all claims against Edwards in his official capacity are dismissed.

### II.      No Tort Claims Against Edwards

Plaintiff states that he is not asserting any torts claims against Edwards. **Doc. 58 at 15**. Pursuant to Plaintiff's statement, Edwards requests that the Court dismiss any torts claims against him. Accordingly, the Court notes that any torts claim against Edwards is dismissed.

### III.      The Court will Consider the Video Content of the Incident

Normally, a Court will not consider video evidence of an incident at the motion to dismiss stage. *Estate of Valverde v. Dodge*, No. 16-CV-01703-MSK-MEH, 2017 WL 1862283, at *10 (D. Colo. May 9, 2017), report and recommendation adopted sub nom. *Estate of Valverde by & through Padilla v. Dodge*, No. 16-CV-1703-MSK-MEH, 2017 WL 3530282 (D. Colo. Aug. 17, 2017). Nevertheless, "As a general rule, a court ruling on a motion to dismiss 'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.' *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)." *Choate v. City of Gardner, Kansas*, No. 16-2118-JWL, 2016 WL 2958464, at *3 (D. Kan. May 23, 2016).

The complaint repeatedly refers to the video surveillance of the incident, and Edwards similarly relies upon it in support of his position. As the substance of the video is central to

4

Plaintiff's claims and the authenticity of the video is undisputed, the Court will consider the content in rendering a determination.

### The Video Surveillance of the Incident

The video opens with several inmates having a meal on the main floor, centered in the camera view. After approximately fifty seconds, two inmates take the stairs to the upper level of the pod. Just prior to ascending the stairs, the second inmate removes his shirt and follows the first inmate. Together they enter what has been identified as Plaintiff's cell and disappear from view. Meanwhile, the remaining inmates continue to eat on the main floor without incident; one seated, shirtless inmate appears to look up towards the upper floor a number of times.

About thirty seconds later (1:34 video mark), an inmate (identified as Plaintiff) appears from inside the cell and makes his way down the stairs. Behind him, the two other inmates emerge from the cell but make no move to follow. Plaintiff reaches the main floor and disappears from view, allegedly approaching the control room window. **Doc. 29-1 Ex. A, at 1:45**.  At the same time one inmate moves to the top of the stairs while the other returns to Plaintiff's cell, re-emerging with his shirt in hand. Once the shirtless inmate has put his shirt on, the two head down the stairs. The now fully clad inmate rapidly descends the stairs and returns to his original position at a table, appearing to drink something while the first inmate descends more slowly to the main floor, where he begins pacing slowly behind the dining tables. Plaintiff remains out of sight, although a few of the eating inmates appear to be gazing in the direction where he exited the camera view.

Next, while the one inmate continues pacing, another inmate wearing a black bandana stands up from his table and walks across the floor, ultimately disappearing from view in a blind spot beyond the stairs. *Id.* **at 2:35-2:49**. The remaining inmates continue to eat or remove their

trays from the dining tables. Then the inmate with the bandana reappears briefly in camera view, before exiting into the blind spot where Plaintiff had previously walked. *Id*. **at 3:25** After a few seconds, the eating inmates all turn in concert in that direction, and several rapidly approach the same area off screen. *Id.* **at 3:33.** After several seconds, a group reappear in view near the stairs, where the camera captures Plaintiff being beaten and kicked by two inmates as he falls to the ground. *Id*. **at 3:50**. The inmates then back away while Plaintiff remains on the ground, with just his feet in view. In the ensuing moments, Plaintiff disappears from view; some inmates pace back and forth facing that direction, while others return to cleaning up the tables and removing trays. *Id*. **at 3:54-4:29.** Several correctional officers then appear, walking slowly into view while seeming to direct the inmates to vacate the area. *Id*. **at 4:30.** The majority of the inmates disperse while three remain by the tables continuing to remove food from the dining area. Plaintiff's location is unclear at the close of the video.

### IV.     Constitutional Claims against Defendant.

#### A.     Qualified Immunity Standard.

Defendant has asserted the defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Romero v. Story*, 672 F.3d at 880.

Plaintiff carries a heavy two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct.  *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016). For a violation to be clearly established, "there must be a Supreme Court or Tenth Circuit decision

on point, or the clearly established weight of authority from other courts must have found the law

to be as the plaintiff maintains." *Mocek v. City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015)

(quoting *Morris v. Noe,* 672 F.3d 1185, 1196 (10th Cir.2012)). A case need not be directly on

point, "but existing precedent must have placed the statutory or constitutional question beyond

debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011). Qualified immunity protects "all but the

plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, —— U.S. ——,

136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs,* 475 U.S. 335 (1986)).

" 'Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects

the defendant to a more challenging standard of review than would apply on summary judgment.'

*Peterson v. Jensen,* 371 F.3d 1199, 1201 (10th Cir.2004); *see also Behrens v. Pelletier,* 516 U.S.

299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) ("At [the motion to dismiss] stage, it is the

defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal

reasonableness.'" *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (emphasis in original).

The Courts are "permitted to exercise their sound discretion in deciding which of the two

prongs of the qualified immunity analysis should be addressed first in light of the circumstances

in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223 at 236 . "In determining whether

the plaintiff meets the requisite burden, [the Court] ordinarily accept[s] the plaintiff's version of

the facts—that is, the facts alleged." *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018)

(quotation marks omitted).  Therefore, the Court first considers whether, viewed in the light most

favorable to Plaintiff, Edwards' conduct violated his constitutional rights.

**B.     Plaintiff has not Demonstrated a Constitutional Violation**

"…[N]either prison officials nor municipalities can absolutely guarantee the safety of their

prisoners. *See Berry v. City of Muskogee,* 900 F.2d 1489, 1499 (10th Cir.1990). They are, however, responsible for taking reasonable measures to insure the safety of inmates. *See id.; Farmer v. Brennan,* 511 U.S. 825, 832–33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

The Eighth Amendment provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotation marks omitted). "In order for a plaintiff to show that a defendant prison official was deliberately indifferent, the plaintiff must show both that the official was subjectively aware of the risk, and that the official recklessly disregarded that risk." *Wilson v. Falk*, 877 F.3d 1204, 1209–10 (10th Cir. 2017) (internal citations and quotation marks omitted). "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot ... be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

> "Finally, in the context of a Fourteenth Amendment claim like this one, [Plaintiff] could establish the requisite state of mind by showing that [Edwards] 'acted with deliberate indifference.'… In turn, the deliberate-indifference test itself has three requirements. [Plaintiff] ha[s] to show (1) that [Edwards] was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]'; (2) that he actually drew that inference; and (3) that he was 'aware of and fail[ed] to take reasonable steps to alleviate that risk.' "

*Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018) (internal citations omitted).

8

**1. Plaintiff failed to show personal involvement of Edwards in a constitutional violation.**

Edwards argues that Plaintiff has failed to demonstrate a constitutional violation, specifically that the factual allegations in the complaint against him are insufficient to demonstrate a plausible claim. **Doc. 47 at 19-20**. The Court agrees. Even assuming Plaintiff's well-pled allegations are true, Plaintiff failed to show a constitutional violation because he failed to adequately demonstrate that Edwards was personally involved in the constitutional violation or that there was a nexus between the alleged violations and policies he maintained.

Plaintiff must show Edwards' "direct personal responsibility" for the claimed Eighth Amendment violation. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760 768 (10th Cir. 2013). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. It is not enough that Edwards allegedly acted in a passive supervisory role when the Plaintiff's constitutional rights were violated. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). (*See e.g.* SAC ¶ 8 "Control Officer Edwards failed to allow Orozco to be removed from the Pod in spite of his pleas to do so under color of law all of which are directly related to the negligent training and supervision of SCDC personnel by SCDC and Sandoval County.")   Rather, Plaintiff must show an "affirmative link" between Edwards and the constitutional violation, through the following elements: (1) personal involvement, (2) sufficient causal connection, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d at 767.

Alternatively, to the extent Plaintiff seeks to assert a § 1983 supervisory claim and

overcome Edwards' assertions of qualified immunity, Plaintiff must establish that Edwards, by virtue of a policy over which he possessed supervisory responsibility, caused a violation of Plaintiff's clearly established constitutional rights. *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013) (Plaintiff "must identify specific actions taken by particular defendants, or specific policies over which particular defendants possessed supervisory responsibility, that violated [his] clearly established constitutional rights."); *see also Cox v. Glanz*, 800 F.3d 1231, 1250 (10th Cir. 2015) (analyzing clearly established law as to supervisory liability claim), *and Dodds v. Richardson*, 614 F.3d at 1199 (To impose supervisor liability under § 1983, a plaintiff must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.").

None of the facts asserted or the record cited by Plaintiff show sufficient personal involvement by Edwards, much less a nexus between the alleged violations and any policy or custom promulgated by him. Instead, Plaintiff relies on conclusory or speculative statements to ascribe personal knowledge or intentional activity to Edwards (and other officers) which is simply not reflected in the video and is insufficient to support his claim of a constitutional violation. *See e.g.* SAC ¶¶ 17-19, 26, 41, 56. Additionally, Plaintiff relies upon an Incident Report to claim that Edwards acted fraudulently or took conflicting action but failed to include the report. *See e.g.* SAC ¶¶ 8, 20, 34, 57, 59.

Plaintiff has also not shown that Edwards acted with subjective deliberate indifference or acted unreasonably. *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting *Benefield v. McDowall,* 241 F.3d 1267, 1271 (10th Cir.2001) ("To establish a cognizable Eighth Amendment

10

claim for failure to protect, the plaintiff 'must show that he is incarcerated under conditions posing a substantial risk of serious harm' the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component."). Plaintiff suggests that approaching the control room window to inform the officers that he had just been assaulted and the fact that Edwards and the second control room officer did not comply with his request to be removed from the pod, over a two minute period, prior to being assaulted by several inmates, demonstrates deliberate indifference. The Court is unconvinced. This assertion does not evince that Edwards set in motion a series of events he knew would ultimately lead to the attack. *See Perry v. Durborow*, 892 F.3d at 1121–22. The Court also notes that while there were only two officers allegedly in the control room when the inmates attacked Plaintiff, in the following moments approximately five officers entered the pod to intervene, and it is not unreasonable to assume it took some time for the officers to gather.

Plaintiff's statement that the positioning of the bandana-clad inmate out of view of the cameras under the stairs should have informed the officers that an attack was imminent, or that the second attack was "obviously planned and orchestrated" is conclusory. **SAC ¶¶ 16-17**. Moreover, to the extent that the complaint asserts that the inmates acted brazenly, "almost as if they knew they would not be punished…" such that it could be said that Edwards and the officers "intentionally did not remove [Plaintiff] for almost two minutes prior to the attack making it appear that they did not remove him to ensure [Plaintiff] "got what he deserved," is speculative and absent factual support. Plaintiff's Eighth and Fourteenth Amendment claims therefore fail.

Considering Plaintiff's remaining assertions in the complaint relevant to Edwards[1], the

---

1 The parties dispute whether the use of "Control Room Occupants" meets the requisite pleading specificity. The

Court concludes that Plaintiff falls short of showing that Edwards violated Plaintiff's constitutional rights.

### C.   <u>Plaintiff has not Demonstrated that the Law is Clearly Established</u>

Even if Plaintiff could demonstrate a constitutional violation with respect to Edwards, Plaintiff relies upon inapposite cases to show that the law was clearly established. Those cases do not support the proposition that an officer in Edwards' position would be on notice that failing to remove Plaintiff within two minutes of his approaching the control room window asserting he had been assaulted amounted to a constitutional violation. *See Lawrence v. Reed*, 406 F.3d 1224, 1230 (10th Cir. 2005) ("The essential inquiry is whether an objectively reasonable official have known that his conduct was unlawful.").

### <u>The Law Regarding a Clearly Established Constitutional Violation</u>

"The law is clearly established if there is a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, that has found the law to be as the plaintiff maintains." *Gadd v. Campbell*, 2017 WL 4857429, at *4 (10th Cir. 2017).  "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, ⸺ U.S. ⸺, 136 S.Ct. 305, 308 (2015) (per curiam) (internal quotation marks omitted). "Clearly established law should not be defined at a high level of generality." *White v. Pauly*, ⸺ U.S. ⸺, 137 S.Ct. 548, 552 (2017) (internal quotation marks omitted).  Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.* "While the facts of the cases compared need not be identical, they must be sufficiently

---

Court has determined that it does and has considered both allegations which refer specifically to Edwards by name as well as those which refer to "control room occupants" and clearly include Edwards.

analogous to satisfy the particularized context necessary to support liability." *Eidson*, 515 F.3d at 1148 (internal citation omitted).

Plaintiff bears the burden of citing to case law and articulating the clearly established right they claim has been violated. *See Thomas v. Durastanti,* 607 F.3d 655, 669 (10th Cir. 2010); *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007) ("[T]he record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." (internal quotation marks omitted)). In analyzing clearly established law, the Court looks at the cases cited by Plaintiff to determine whether those cases can serve as clearly established law. *See, e.g., A.M. v. Holmes*, 830 F.3d 1123, 1154 (10th Cir. 2016) (granting qualified immunity where "neither of Plaintiff's cited sources can serve as the clearly established law governing this First Amendment retaliation claim.").

To satisfy his burden of citing to clearly established law, Plaintiff cites to: *United States v. Serrata*, 425 F.3d 886 (10th Cir. 2005); *Lopez v. LeMaster,* 172 F.3d 756 (10th Cir. 1999); *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir.1998); and *Verdecia v. Adams*, 327 F.3d 1171 (10th Cir. 2003). Plaintiff asserts generally that "The United States Supreme Court over twenty-five (25) years ago established the right of detainee's to be provided a safe environment: A prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety[.] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))." **Doc. 58 at 9** (internal quotations omitted).

Having reviewed the relevant law, the Court concurs with Defendant that Plaintiff's reliance upon these cases is misplaced.

**The Serrata Case**

13

Plaintiff cites to *Serrata* in support of the premise that an inmate is constitutionally entitled to be free from cruel and unusual punishment and that a prison guard has a "concomitant" duty to protect the inmate from harm. **Doc. 58 at 8-9.** In *Serrata*, a criminal case, the plaintiff-inmate was severely beaten by correctional officers after refusing to sit in an assigned seat in the dining hall. Serrata, also a corrections officer, was present and standing by as the incident unfolded, but did not intervene. *United States v. Serrata*, 425 F.3d 886, 890 (10th Cir. 2005). The officers were convicted by jury verdict and appealed. Serrata "contend[ed] that his inaction, coupled with the varying testimony with regard to his role in the offense, [was] enough to call into question the jury's verdict." *Id*. at 895-96. In the relevant portion, the Tenth Circuit disagreed with Serrata, stating:

> [Plaintiff] has a constitutional right to be free from cruel and unusual punishment, and, as a prison guard, Mr. Serrata has a concomitant constitutional duty to protect him from such harm…There is no question that Mr. Serrata had a legal obligation to act to prevent the assault on [Plaintiff], and we flatly reject any suggestion otherwise. *See United States v. Reese*, 2 F.3d 870, 887–88 (9th Cir.1993) (affirming conviction of an officer who did not intervene and holding that "[t]here was a co-extensive duty on the part of the United States to protect against lawless violence persons so within their custody, control, protection and peace; and a corresponding right of those persons, secured by the Constitution and laws of the United States, to be so protected by the United States"); *accord Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir.1996) (noting, in the context of a 42 U.S.C. § 1983 suit, clearly established precedent that a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable).

*Id*. at 896.

While, at most, the law that is well established by *Serrata* is that an officer has a duty to intervene to protect an inmate from the excessive force of other officers, the Court finds that the facts of that case are not analogous to the instant action and thus cannot serve as clearly established law with respect to the instant matter.

**The Lopez Case**

The parties both cite to *Lopez v. LeMaster* (172 F.3d 756 (10th Cir. 1999)) in support of their respective positions; Edwards argues that the case is distinguishable from the matter at hand, while Plaintiff claims it demonstrates clearly established law. While *Lopez* stands for the general proposition that prison officials are responsible for "taking reasonable measures to insure the safety of inmates," (*Lopez v. LeMaster*, 172 F.3d at 759), the Court agrees with Edwards that the case is factually distinct.

In *Lopez*, the Appellant (plaintiff) was arrested and placed in general population, where he was approached by another inmate who accused him of "messing" with the inmate's mother and sister, poked him in the stomach with a broom, spat upon him, and threatened to kill him. *Id*. at 758. The plaintiff reported the incident to an officer, who took him to his office to prepare a written statement. *Id*. While in the office, the plaintiff informed the officer of his fear of returning to general population because he believed other inmates would attack him. *Id.* at 759. The officer did not respond and returned the plaintiff to his cell, allegedly while within earshot of other inmates as they plotted to attack him. *Id*.

Approximately five minutes after being returned to his cell, the plaintiff was attacked by two cellmates and beaten. Shortly thereafter, the two inmates returned with two more cellmates, and together, beat the plaintiff again. *Id*. Approximately ten minutes after the second beating, the office returned, whereupon the plaintiff told him he needed to go to the hospital. *Id*. The officer removed plaintiff from his cell and returned him to his office. While in the office, the officer telephoned an unknown individual to discuss whether to transport plaintiff to a hospital. Following the phone conversation, the officer told the plaintiff, " 'you are still conscious, we don't have to

take you.'…The jailer gave appellant some aspirin and placed him in a different cell, but did not take him to the hospital." *Id*. Upon his release the next day, the plaintiff went to a hospital where he was treated for severe contusions and various other injuries. *Id*. The plaintiff brought an action asserting liability against the county sheriff individually and in his official capacity for failing to prevent the assault and to address his serious medical needs. *Id*.

The Circuit Court found that the plaintiff made a sufficient showing to defeat summary judgment, having adequately provided factual evidence that he was "incarcerated under conditions posing a substantial risk of serious harm … and that the sheriff was aware of and disregarded an excessive risk to inmate health or safety by failing to take reasonable measures to abate the risk." *Id*. at 760–61 (internal citations omitted).

Here, Plaintiff was purportedly attacked within his cell by two inmates, after which he approached the control office window, claiming he had been assaulted and requesting removal from the pod. Within the ensuing two minutes, Plaintiff was attacked by several inmates. The Court finds that this situation bears little similarity to *Lopez*. As is depicted in the video, the two incidents, the first of which cannot be seen at all on the video, took place within a short span of a few minutes. Unlike *Lopez*, Edwards is not accused of removing Plaintiff from the pod and then returning him to a known danger, but rather is alleged to have been one of a group of officers who purportedly failed to remove Plaintiff quickly enough to prevent an attack. **Doc. 59 at 4-5**. Additionally, the officer in *Lopez* did not return to the plaintiff's cell until ten minutes after the second attack. Thus, the Court agrees with Edwards that the *Lopez* action is too dissimilar to demonstrate clearly established law.

Plaintiff's remaining cases are equally insufficient to demonstrate clearly established law.

16

Plaintiff cites to *Craig v. Eberly* (164 F.3d 490, 495 (10th Cir.1998)) with respect to his arguments relating to "Liability for Failure to Protect." **Doc. 58 at 10**. *Craig* dealt with a pretrial detainee's 1983 claims relating to incarceration conditions such as a poorly ventilated cell, clogged sink drain and infrequent access to showers. The Court finds this case irrelevant to the instant action, which involves inmate on inmate violence.

### The Verdecia Case is Distinguishable

In *Verdecia*, the plaintiff, a federal prison inmate, brought an action for violations under the Fifth, Eight, and Fourteenth Amendments against two special investigative agents tasked with investigating criminal activity within prisons, alleging the officials acted with deliberate indifference to a substantial risk of harm when they placed him in a cell with members of the Latin Kings gang, who attacked him due to his Cuban nationality. *Verdecia v. Adams*, 327 F.3d 1171, 1173 (10th Cir. 2003). Two days after being placed in a special housing unit with the two gang members, the plaintiff allegedly spoke with one of the defendant-officers and requested that he be removed from the cell. *Id*. The following day, plaintiff submitted a transfer form to the attention of a second defendant-officer, expressing his fear of attack by his cellmates. *Id*. Four days later, the plaintiff was stabbed multiple times by his cellmates. *Id*. However, there was no evidence that the defendant-officer received the transfer request form prior to plaintiff's assault. *Id*.

The plaintiff alleged that the officers should have been aware of the obvious risk to his safety due to two prior incidents within the federal prison system, one of which occurred at the same prison where plaintiff was held, between inmates of Cuban nationality and the Latin Kings, and that defendants' failure to take action demonstrated deliberate indifference to a substantial risk of harm in violation of his constitutional rights. *Id*. at 1175. Defendants argued that the two prior

incidents were insufficient to demonstrate both subjective and deliberate indifference to a substantial risk of harm, and that the prior attack that occurred in the same prison was investigated and determined to be an isolated, non-gang related issue. *Id*.

The Tenth Circuit granted qualified immunity,[2] holding that even if the defendant-investigator had been negligent or drawn an erroneous conclusion, this "does not rise to the level of an Eighth Amendment violation based on deliberate indifference." *Id*. With respect to demonstrating deliberate indifference, the Circuit Court provided:

> Deliberate indifference requires more than a showing of simple or heightened negligence. *Board of County Commrs. v. Brown,* 520 U.S. 397, 407–10, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *see Estelle v. Gamble,* 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Verdecia must do more than establish that [Defendants] should have known of the risk of harm. *Craig v. Eberly,* 164 F.3d 490, 495 (10th Cir.1998). To establish deliberate indifference, Verdecia must present evidence supporting an inference that [Defendants] actually knew about a substantial risk of serious harm to his safety. *Oxendine v. Kaplan,* 241 F.3d 1272, 1277 (10th Cir.2001). Deliberate indifference requires that the defendant's conduct is "in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow," or that the conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Berry v. City of Muskogee,* 900 F.2d 1489, 1494 (10th Cir.1990). The mere showing of simple, or even heightened, negligence does not establish that [Defendants] were subjectively aware of the risk. Subjective awareness requires that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Craig,* 164 F.3d at 495. This awareness requirement exists because "prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment" in a manner that violates the Eighth Amendment. *Farmer,* 511 U.S. at 844, 114 S.Ct. 1970.

Here, Edwards avers that "a two-minute delay in responding to a request to be removed from a pod illustrates far less indifference than a four-day delay to a known risk. Therefore, if

_____

2  In granting qualified immunity, the Tenth Circuit did not discuss clearly established law.

anything, *Verdecia* informs the Court that the delay observed on the video may not establish deliberate indifference." **Doc. 59 at 6.** While the Court does not necessarily agree that *Verdecia* provides that under no circumstance could a two-minute delay equate to deliberate indifference, it does agree that the facts of that case are distinguishable and that in the instant action, the two-minute delay in the video does not rise to the requisite level of deliberate indifference as provided by the *Verdecia* Court. Therefore, in light of Plaintiff's failure to cite to clearly established law, the Court holds that Edwards is entitled to qualified immunity.

## CONCLUSION

Plaintiff has fallen short of meeting his heavy burden to show that Edwards is not entitled to qualified immunity.

**IT IS THEREFORE ORDERED** that all claims against Edwards in his official capacity are **DISMISSED; and**

**IT IS FURTHER ORDERED** Defendant's Motion to Dismiss Plaintiff's claims asserted against Edwards on the basis of qualified immunity **(Doc. 47)** is **GRANTED.**

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE