IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RENE OROZCO,

    Plaintiff,

v.                                                                         No. 1:18-cv-00769-KWR-SCY

THE BOARD OF COMMISSIONERS OF THE
COUNTY OF SANDOVAL, CORRECTIONS OFFICER
BRIAN EDWARDS individual and in his official capacity,
CORRECTIONS OFFICER (FNU) MALDONADO
Individually and in his official capacity, LIEUTENANT (FNU)
TRUJILLO individually and in his official capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss, filed March 10, 2020. **Doc. 46.** Having reviewed the parties' pleadings and the applicable law, the Court finds the Motion is well-taken and, therefore is **GRANTED,** with the exception of Plaintiff's cause of action under state law for negligent or inadequate medical care, over which the Court declines to exercise supplemental jurisdiction having dismissed all federal claims.

### BACKGROUND and PROCEDURAL HISTORY

This case arises from Defendants' alleged deliberate indifference to the endangerment of Plaintiff Rene Orozco, resulting in two successive beatings while incarcerated at Sandoval County Detention Center (SCDC). Plaintiff also alleges he was released on foot after receiving inadequate medical attention. Plaintiff claims that the attacks, at the very least the second one, were preventable.

Plaintiff filed his complaint in the Thirteenth Judicial District in the State of New Mexico.

Defendants timely filed a Notice of Removal with this Court based on federal question jurisdiction, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. Plaintiff has subsequently twice amended his complaint. The Second Amended Complaint (SAC) (**Doc. 45**) filed this case asserts claims under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act for, *inter alia*, Inadequate Inmate Protection and Inadequate Prevention of Physical Injury (Counts One and Two), Inadequate Medical Care (Count Three), and Negligence (Count Four). On August 27, 2020, the Court granted Defendant Brian Edwards' (Edwards) Motion to Dismiss on the basis of Qualified Immunity. **Doc. 63.** The Court now turns to Defendants' Motion to Dismiss all claims against Defendant The Board of County Commissioners of the County of Sandoval (The Board). **Doc. 46.** The Court notes that the instant motion also requests dismissal of the claims against Edwards in his official capacity as redundant given the inclusion of the municipality. The Court has already granted dismissal of the official capacity claims against Edwards in its prior Memorandum and Opinion (**Doc. 63**), with Plaintiff's consent, and thus will not restate the same here.

## LEGAL STANDARD

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss, the complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). All well-pleaded factual allegations are accepted as true by the Court and "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280

(10th Cir. 2013). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully. *Id*. (citing *Twombly*, 550 U.S. at 556); see also *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). The degree of specificity "depends on context". *Id*. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

### I.   The Court will Consider the Video Content of the Incident

Normally, a Court will not consider video evidence of an incident at the motion to dismiss

stage. *Estate of Valverde v. Dodge*, No. 16-CV-01703-MSK-MEH, 2017 WL 1862283, at *10 (D. Colo. May 9, 2017), report and recommendation adopted sub nom. *Estate of Valverde by & through Padilla v. Dodge*, No. 16-CV-1703-MSK-MEH, 2017 WL 3530282 (D. Colo. Aug. 17, 2017). Nevertheless, "As a general rule, a court ruling on a motion to dismiss 'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.' *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)." *Choate v. City of Gardner, Kansas*, No. 16-2118-JWL, 2016 WL 2958464, at *3 (D. Kan. May 23, 2016).

The complaint repeatedly refers to the video surveillance of the incident, and Edwards similarly relies upon it in support of his position. As the substance of the video is central to Plaintiff's claims and the authenticity of the video is undisputed, the Court will consider the content in rendering a determination.

## **The Video Surveillance of the Incident**

The video opens with several inmates having a meal on the main floor, centered in the camera view. After approximately fifty seconds, two inmates take the stairs to the upper level of the pod. Just prior to ascending the stairs, the second inmate removes his shirt and follows the first inmate. Together they enter what has been identified as Plaintiff's cell and disappear from view. Meanwhile, the remaining inmates continue to eat on the main floor without incident; one seated, shirtless inmate appears to look up towards the upper floor a number of times.

About thirty seconds later (1:34 video mark), an inmate (identified as Plaintiff) appears from inside the cell and makes his way down the stairs. Behind him, the two other inmates emerge from the cell but make no move to follow. Plaintiff reaches the main floor and disappears from

view, allegedly approaching the control room window. **Doc. 29-1 Ex. A, at 1:45**. At the same time one inmate moves to the top of the stairs while the other returns to Plaintiff's cell, re-emerging with his shirt in hand. Once the shirtless inmate has put his shirt on, the two head down the stairs. The now fully clad inmate rapidly descends the stairs and returns to his original position at a table, appearing to drink something while the first inmate descends more slowly to the main floor, where he begins pacing slowly behind the dining tables. Plaintiff remains out of sight, although a few of the eating inmates appear to be gazing in the direction where he exited the camera view.

Next, while the one inmate continues pacing, another inmate wearing a black bandana stands up from his table and walks across the floor, ultimately disappearing from view in a blind spot beyond the stairs. *Id*. **at 2:35-2:49**. The remaining inmates continue to eat or remove their trays from the dining tables. Then the inmate with the bandana reappears briefly in camera view, before exiting into the blind spot where Plaintiff had previously walked. *Id*. **at 3:25** After a few seconds, the eating inmates all turn in concert in that direction, and several rapidly approach the same area off screen. *Id.* **at 3:33.** After several seconds, a group reappear in view near the stairs, where the camera captures Plaintiff being beaten and kicked by two inmates as he falls to the ground. *Id*. **at 3:50**. The inmates then back away while Plaintiff remains on the ground, with just his feet in view. In the ensuing moments, Plaintiff disappears from view; some inmates pace back and forth facing that direction, while others return to cleaning up the tables and removing trays. *Id*. **at 3:54-4:29.** Several correctional officers then appear, walking slowly into view while seeming to direct the inmates to vacate the area. *Id*. **at 4:30.** The majority of the inmates disperse while three remain by the tables continuing to remove food from the dining area. Plaintiff's location is unclear at the close of the video.

## II.     Dismissal of Claims against Defendants Maldonado and Trujillo

Defendants move to dismiss the claims asserted against Defendants Maldonado and Trujillo due to Plaintiff's failure to timely serve them in accordance with Federal Rule of Civil Procedure 4(m). Plaintiff has consented to dismissal of those claims. Accordingly, all claims against Defendants Maldonado and Trujillo are dismissed without prejudice.

## III.    Plaintiff's Monell Claim Asserted against The Board

Defendants claim that the SAC fails to adequately assert a *Monell* claim against the Board, because it fails to proffer specific facts evincing any unconstitutional municipal customs or policies. **Doc. 46 at 8-9**. Defendants also posit that even if Plaintiff could demonstrate such a custom or policy, Plaintiff falls short of demonstrating the requisite elements of a policy failure, which include deliberate indifference to a known problem that was the actual cause of Plaintiff's alleged injuries. *Id*. at 9-11. In his Response, Plaintiff argues that although the SAC does not include the words "custom" or "policy," "Plaintiff has extensively described the actions of the County employees or agents which in themselves describe deliberate indifference and show a lack of training, supervision or deficiencies in hiring, especially when combined with the policies violations that Plaintiff referenced in his SAC." **Doc. 57 at 4.**  Specifically, Plaintiff cites Paragraphs 5, 21, and 42 of the SAC as evincing these "obvious" erroneous policies. **Doc. 57 at 5**.

This Court has already determined, pursuant to qualified immunity, that Plaintiff cannot maintain his cause of action against Edwards, the sole remaining named defendant, with respect to Inadequate Inmate Protection and Inadequate Prevention of Physical Injury (Counts One and Two). This finding bars Plaintiff's cause of action against the Board because there is no underlying constitutional violation on which to base Plaintiff's *Monell* claim. *See Hinton v. City of Elwood,*

6

*Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers."). Nor has Plaintiff properly pled a collective action theory such that the Board could be liable even without an individual officer's constitutional violation. *See Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th Cir. 1985) ("Although the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights.")

### **Plaintiff has not Established the Elements of a Monell Claim**

The Court agrees with Defendants that Plaintiff has not adequately pled an unconstitutional policy or custom such that The Board could be held liable. In *Monell v. New York City Dept. of Social Services* (436 U.S. 658) (1978), the Supreme Court provided that "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983. 'It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable under § 1983.'" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (internal citation omitted)(emphasis in original).

"[T]o establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged. When the asserted policy consists of the failure to act, the plaintiff must demonstrate that the municipality's inaction was the result of " 'deliberate indifference' to the rights of its inhabitants." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (internal citations omitted). When a plaintiff asserts municipal liability pursuant to a lack of training or supervision,

the plaintiff must do more than merely allege that the relevant municipality had deficient policies or training in place.

> It is not enough, however, for [plaintiff] to show that there were general deficiencies in the county's training program for jailers. Rather, he must identify a specific deficiency in the county's training program closely related to his ultimate injury, and must prove that the deficiency in training actually caused his jailer to act with deliberate indifference to his safety.

*Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999) (internal citation omitted); *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1212 (D.N.M. 2015) ("When a claim is brought against a municipality for failing to train its officers adequately, the plaintiff must show that the municipality's inaction was the result of deliberate indifference to the rights of its inhabitants.").

In *Connick v. Thompson* (563 U.S. 51, 61–62) (2011), the Supreme Court explained the high bar required to show deliberate indifference on the part of a municipality:

> " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cty.,* 520 U.S., at 410, 117 S.Ct. 1382. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.,* at 407, 117 S.Ct. 1382. The city's " 'policy of inaction' " in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton,* 489 U.S., at 395, 109 S.Ct. 1197 (O'Connor, J., concurring in part and dissenting in part)… [Thus,] "A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Bryan Cty.,* 520 U.S., at 409, 117 S.Ct. 1382. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.,* at 407, 117 S.Ct. 1382.

Here, the Court is unconvinced by Plaintiff's arguments that the various officers' actions make it "obvious" that deficiencies existed within the municipal training and policies. The portions of the complaint that Plaintiff cites to contain generic references to policy he believes individual defendants may have violated. Plaintiff has not identified with any particularity the problematic

8

policies or training issues such that liability could attach to The Board. The Court concludes that Plaintiff has failed to meet his burden to assert a *Monell* claim. Therefore, Defendants' motion to dismiss Plaintiff's claims with respect to municipal liability is granted.

### IV.     The Court Declines to Exercise Jurisdiction over Plaintiff's Remaining State Law Claims

The Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Court "may decline to exercise supplemental jurisdiction over a claim" under § 1367(a) if the Court "has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011); *Quiroz v. ConocoPhillips Co.*, 310 F. Supp. 3d 1271, 1313 (D.N.M. 2018) ("The Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c) applies."), *citing Armijo v. New Mexico*, No. CIV 08-0336, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009)(Browning, J.)("The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it."))".

The Court has discretion to decide *sua sponte* whether to exercise supplemental jurisdiction over remaining state law claims. *See Ames v. Miller*, 247 Fed. Appx. 131, 133-35 (10th Cir. 2007) (unpublished) (affirming court's sua sponte decisions to dismiss and to decline supplemental jurisdiction over state law claims).  In dismissing state law claims for lack of supplemental jurisdiction, the Court weighs the following factors: judicial economy, convenience, fairness, and

comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). In the usual case, this will point toward dismissal. *Id.*

Having dismissed Plaintiff's federal claims, and having conducted the relevant factorial analysis, the Court declines to exercise jurisdiction over the remaining state law claims relating to the New Mexico Tort Claims Act.

## CONCLUSION

For the reasons stated above, Plaintiff's federal claims against Defendants are dismissed. Having disposed of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction to consider the state law claims that relate to allegations under the New Mexico Tort Claims Act and will instead remand to state court.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss **(Doc. 46),** with the exception of Plaintiff's state law claims, is **GRANTED**.

**IT IS FURTHER ORDERED** that that the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

**IT IS FINALLY ORDERED** that this action is **REMANDED** to the Thirteenth Judicial District Court, Sandoval County, New Mexico. The Clerk of Court is hereby directed to take the necessary actions to remand the case.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE